[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO OPEN OR SET ASIDE JUDGMENT
The marriage of the parties was dissolved by this Court on March 9, 1992. On that date the plaintiff appeared in Court and was represented by counsel. The defendant was not present in Court. She had previously filed a pro se appearance form with the Court on November 7, 1991, and filed another pro se appearance form on March 9, 1992. The pro se appearance forms indicated that her residence address changed during those dates from a Dunedin, Florida address to a Oldsmar, Florida address.
At the time of judgment, the plaintiff took the stand and testified that the marriage had broken down irretrievably and that there was no prospect that it could be reconciled.
The plaintiff submitted to the Court an "Agreement" dated October 26, 1991, which he represented was the complete agreement of the parties. The plaintiff's signature was acknowledged and sworn to at Hartford, Connecticut, on October 23, 1991. The defendant's signature was acknowledged and sworn to at Panellas County, Florida, on October 26, 1991.
The plaintiff testified that he believed the agreement to be a fair and equitable division of the marital assets and requested that it be incorporated into the judgment of dissolution.
The defendant has filed a Motion To Open or Set Aside Judgment, dated June 26, 1992. CT Page 11565
In her Motion the defendant maintains that the judgment is grossly unfair to her, that the financial affidavits relied upon by her were misleading, and that the plaintiff fraudulently induced her into believing that her legal interests would be protected without the need for her to retain counsel or for her to physically appear in Court. She seeks a more equitable distribution of the marital assets.
The following facts are found as a result of the evidence and testimony of the parties at the time the Motion was heard.
The parties had been married for twenty-five years and had two children, one is deceased and the other is no longer a minor.
On or about October 10, 1991, the defendant vacated the marital home after being confronted by the plaintiff with written evidence of her extramarital affair with a contractor employed by the plaintiff to remodel their house. The affair had started approximately 14 months previously.
The defendant removed herself to her parents' home in Florida where she continued to reside until she acquired her own Florida condominium.
During October, 1991, the plaintiff communicated with the defendant and traveled to Florida to discuss the dissolution of their marriage. During those discussions, the defendant informed the plaintiff that she had contracted a venereal disease. She also told him that during the marriage she had been involved in two additional extramarital affairs with a car salesman and a hairdresser.
During those discussions, the plaintiff provided the defendant with a separation agreement, and quitclaim deeds for certain marital assets which she executed and had acknowledged.
Starting in October, 1991, the plaintiff provided the defendant with cash and the use of his credit cards to help meet her expenses. The plaintiff assisted the defendant in locating a Florida condominium and an automobile for her use.
The parties had additional discussions concerning their impending dissolution from October 1991 to February 1992. In February, 1992, the plaintiff provided the defendant with copies CT Page 11566 of his financial affidavit, the separation agreement and a proposed judgment file.
The separation agreement was incorporated into the judgment on March 9, 1992, and is part of the Court file (Defendant's Exhibit 1). There is no need to recite its provisions in detail. It does provide, in part, for the following property distribution.
The plaintiff became obliged to lease or purchase for the defendant's use a Florida condominium valued up to $150,000.00. He also was to provide the defendant with $15,000.00 to obtain an automobile, and to pay for the auto insurance for three years. He also is to provide $15,000.00 for furnishings for her condominium and pay the cost of moving the defendant's belongings from Connecticut to Florida.
In addition, the plaintiff agreed to pay up to $10,000.00 for two years of education to permit the defendant the opportunity to "enhance her employment skills."
He also agreed to pay to her $750.00 per week as periodic alimony for five years. He agreed to hold her harmless from a considerable amount of financial debts which she might have otherwise had a legal obligation to repay.
In addition, he agreed to share the personalty in the marital residence in an equitable fashion, allowed the defendant to retain all of her jewelry, as well as an IRA Guardian Account then valued at over $14,650.00 and her Guardian Life Insurance Policy having a face value of $714,745.00 and a Cash Surrender Value of $95,300.00. She was given the option of liquidating that policy or making her son, John, its primary irrevocable beneficiary.
The defendant maintains that notwithstanding the aforementioned provisions of the Separation Agreement, the plaintiff actually was obligated to convey to her "less than 10 percent of the marital assets."
She further claims that she didn't fully appreciate the disparity of the settlement at the time she signed the agreement in October, 1991, because she didn't have the plaintiff's financial affidavit available to her at that time. She did receive his financial affidavit in February, 1992, several weeks CT Page 11567 before judgment entered.
The defendant's argument that the judgment should be opened and set aside rests on her claim that the plaintiff defrauded her by not disclosing what her equitable interest in the marital assets was and, further, by discouraging her from obtaining her own legal counsel to protect her interests prior to and at the time of judgment.
The Court is very familiar with the facts and circumstances considered by the Court in the case of Kenworthy v. Kenworthy,180 Conn. 131 (1980), relied on so emphatically by the defendant in her brief. This Court is well aware of the discretion it has in deciding whether to open a judgment based upon a stipulation of the parties.
The evidence in the instant case indicates that prior to judgment, the defendant was in possession of accurate information concerning the marital assets and was in no way precluded by the plaintiff from obtaining competent legal representation. She made a conscious election not to seek counsel.
The plaintiff testified that upon learning of the defendant's two additional extramarital affairs and the fact of her venereal disease, he advised her to obtain her own attorney. He further testified that the defendant indicated that she wanted a "peaceful settlement" of the issues and wanted to avoid making her affairs public.
The Court finds the more credible testimony to be that of the plaintiff.
The Court further finds that even if the proposed distribution of assets was not equal or close to it, the defendant was at all times free to obtain counsel, to seek discovery of the asset picture and to be present at the time of judgment. She was aware of what she was to receive at the time of judgment and considered it satisfactory. Considering the evidence which most certainly would have been adduced in a contested trial, this Court thinks the settlement was satisfactory as well.
For the foregoing reasons, this Court denies the defendant's Motion to open or set aside the March 9, 1992 judgment of dissolution. CT Page 11568
BY THE COURT:
Joseph W. Doherty, J.